**UNITED STATES of America**

v.

**James ,McCOY, Appellant.**

**Nos. 22792, 23090.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 17, 1970.

Decided June 19, 1970.

---

Mr. Joseph Paull, Washington, D.C. (appointed by this court), for appellant.

Mr. Warren R. King, Asst. U.S. Atty., with whom Messrs. Thomas A. Flannery, U.S. Atty., and John A. Terry and Richard A. Hibey, Asst. U.S. Attys., were on the brief, for appellee. Mr. Roger E. Zuckerman, Asst. U.S. Atty., also entered an appearance for appellee in No. 22,792.

Before BAZELON, Chief Judge, WRIGHT, Circuit Judge, and MATTHEWS*, Senior District Judge.

PER CURIAM:

Appellant, age 25, was convicted of and sentenced to life imprisonment for armed robbery.[1] His only previous

---

\* Sitting by designation pursuant to 28 U.S. C. § 294(c) (1964).

1. Appellant was also convicted of assault with a dangerous weapon and possession

conviction was in 1965 for tampering with an automobile for which he received a sentence of 90 days, the execution of which was suspended with one year probation. Under familiar principles, because of the severity of the sentence imposed in this case, we study the record with unusual care.[2]

On June 22, 1968, two men robbed the Congressional Liquor Store in the Southeast section of Washington. The robbers, one armed with a shotgun and one with a silver-colored pistol, entered the store in the early evening and ordered the manager, Mr. Bernard Levine, five or six customers, and the couple that owned the store into the back room. In the course of the robbery, Mr. Levine struggled briefly with the man carrying the shotgun and received, for his efforts, several blows on his head from the robber with the pistol. Appellant here was identified by Mr. Levine as being the robber with the shotgun.[3]

While appellant raises several points on appeal,[4] our attention is directed primarily to the circumstances surrounding the taking of the verdict. When the jury poll reached the eleventh juror, she responded to the clerk's request to "state yes or no whether or not your verdict is the same as that given by your foreman" with the answer: "Yes, with a question mark." Whereupon the trial judge instructed the juror to answer yes or no. She then answered "Yes." Defense counsel immediately approached the bench and objected to the taking of the verdict "until the juror has stated her position." The trial court accepted the verdict without further inquiry or other action over the objection of defense counsel.

Appellant relies on Matthews v. United States, D.C.App., 252 A.2d 505 (1969), in which a juror, asked for her verdict during a poll, responded, "It is conditional." The trial judge instructed the juror, "You have to answer either guilty or not guilty," and the juror responded "Guilty." The District of Columbia Court of Appeals reversed the conviction, finding no assurance that the jury freely and fairly arrived at a unanimous verdict:

> " * * * [W]hen the juror stated that her verdict was conditional, the trial judge should have been alerted to the probability that there might not be unanimity in the verdict. Therefore, he should not have *required* the juror to answer 'either guilty or not guilty,' but should have returned the jury to the jury room for further deliberation.
>
> "The juror's subsequent statement of 'Guilty' did not serve to remove the uncertainty of her verdict since she

---

of a dangerous weapon with intent to use it unlawfully, for which he received sentences of ten years and one year respectively, all sentences to run concurrently.

2. *See, e. g.,* Lampe v. United States, 110 U.S.App.D.C. 69, 70, 288 F.2d 881, 882 (1961) (*en banc*); Tatum v. United States, 88 U.S.App.D.C. 386, 388 n. 3, 190 F.2d 612, 614 n. 3 (1951), and cases cited therein.

3. No formal lineup was held in this case. Of the witnesses present in the store during the robbery, only Mr. Levine testified at trial and identified appellant. Thus the case was essentially a one-witness case, and appellant has challenged the validity of that identification on the basis of a possibly suggestive confrontation at his preliminary hearing. *Compare* Mason v. United States, 134 U.S. App.D.C. 280, 414 F.2d 1176 (1969).

4. Appellant urges with particular vigor that the sentencing in his case was improper, based on several allegedly inaccurate statements by the sentencing judge at the time of sentencing. At that time, the judge pointed out that appellant had been charged with forgery, although he had not been convicted; that he had been carrying a sawed-off shotgun ("the most dangerous weapon at close range known to man"), although the proof only indicated that the weapon was a shotgun; and that appellant had struck Mr. Levine with a pistol, although the proof indicated that only the other robber struck Levine. *See* Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); Scott v. United States, 135 U.S. App.D.C. 377, 419 F.2d 264 (1969). *See also* pages 742–743, *infra.*

was responding to the court's directive that 'you have to answer either guilty or not guilty.' "

252 A.2d at 406. (Emphasis in original; footnote omitted.) The Government here relies primarily on Williams and Coleman v. United States, 136 U.S. App.D.C. 158, 162–163, 419 F.2d 740, 744–745 (1969) (en banc), in which the juror being polled, on being asked "what say you as to the defendant Gerald Coleman on Count 1?" answered "Not guilty" several times before answering "Guilty."

We think this case is significantly closer on its facts to Matthews than to Williams and Coleman. In Williams and Coleman, this court upheld the Government's contention that the juror was merely confused and that as soon as it was made clear to her which defendant of the three[5] on trial was the subject of the poll, she unequivocally answered "Guilty." Moreover, in Williams and Coleman the trial judge, after the poll, asked the jury to retire again to make certain that all doubt as to its verdict had been resolved. See Rule 31(d), Fed. R.Crim.P. On the jury's returning to the courtroom, a further poll was not even requested.

By contrast here the question or uncertainty raised by the juror was not resolved, see Matthews v. United States, supra, nor is her statement attributable to any confusion. Indeed, the juror was not given the opportunity to state the question she had about the verdict, despite the immediate request by appellant's trial counsel that she be allowed to do so. Nor was the jury returned to the jury room to clear up any doubts about the unanimity of its verdict, as occurred in Williams and Coleman.

■■ It is true that after the trial the District Judge met with the juror in his chambers and gave her an opportunity to state her question.[6] But neither appellant, his counsel, the prosecutor, nor a court reporter [7] was present. The Sixth Amendment requires the presence of defense counsel and the accused at all critical stages of the prosecution.[8] We think that resolving questions raised by jurors during the jury poll is such a stage. Moreover, Rule 31(a) of the Federal Rules of Criminal Procedure provides: "The verdict shall be unanimous. It shall be returned by the jury to the judge in open court." [9] Under the circumstances this conviction must be reversed.

Appellant's challenge to the events surrounding his sentencing also require comment, particularly in view of the possibility of a retrial. In sentencing appellant to life imprisonment for armed robbery, the District Judge stated: "I announce at this time that anyone else that is convicted by a jury before me of

---

5. The jury found one of the three not guilty.

6. After the judge discharged the jury, he told the juror he would see her in his chambers during his luncheon break. That appointment was apparently kept, and the next morning the judge called counsel to his chambers and described, on the record, the general tenor of the juror's concern:

"She says, well, there were witnesses at the store who saw the robbery, and they were not called in to testify as to how the robbery took place."

The judge interpreted her concern as focusing on how the robbery occurred. We note, however, that identification was the only issue in the case, that defense counsel had strenuously attacked the accuracy of the Government's only identifi-

cation witness, and that defense counsel had urged the jury to draw an inference favorable to appellant from the absence of any testimony by other witnesses concededly in the store.

7. See United States v. Workcuff, 137 U.S. App.D.C. 263, 422 F.2d 700 (1970).

8. See Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed. 2d 114 (1961).

9. See Rule 43, Fed.R.Crim.P.:

"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict * * *. * * * *"

armed robbery of this nature may expect a similar sentence." In a subsequent letter to appellant, the judge repeated his position: "As you recall, I announced at the time I sentenced you that anyone else who was convicted by a Jury before me of Armed Robbery would receive a life sentence." We note that at the time appellant elected to exercise his right to a jury trial the judge's policy had not been stated publicly.[10] If the Government seeks to retry appellant, however, serious questions would arise whether "[t]he inevitable effect of any such provision is * * * to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." United States v. Jackson, 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968). (Footnote omitted.)

■ In addition to these constitutional difficulties, the judge's stated policy completely undermines the basis on which trial judges have been accorded wide latitude in exercising discretion in determining sentences. In theory, the trial judge is in a peculiarly good position to determine the appropriate sentence because he will have heard the evidence at trial, observed the demeanor of the defendant, absorbed the information in the presentence report, and heard any further personal information or assurances offered by the defendant's allocution. But a rigid policy based solely on the crime with which the defendant is charged is not an exercise of discretion. Cf. Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931).

■■ Moreover, a sentencing policy which focuses solely on the crime committed ignores the rehabilitative purpose of the criminal law, since it permits no room for consideration of the defendant's individual needs. Two well regarded studies of crime and sentencing practices have emphasized the counterproductive results of long sentences imposed on the basis of generalized policies. The President's Crime Commission pointed out:

> "Of the everyday problems of the criminal justice system itself, certainly the most delicate and probably the most difficult concern the proper ways of dealing individually with individuals. Arrest and prosecution are likely to have quite different effects on delinquent boys and on hardened professional criminals. Sentencing occasional robbers and habitual robbers by the same standards is clearly inappropriate. * * * In short, there are no general prescriptions for dealing with 'robbers.' There are no general prescriptions for dealing with 'robbery' either. * * *"[11]

The American Bar Association Project on Minimum Standards for Criminal Justice emphatically endorsed this perspective, pointing out that many people "seem to have lost sight of the fact that almost every offender will again walk the streets after service of even the harshest sanction. Far too little is being done at the sentencing stage to reduce the risk that he will at that point continue the course which led him to trouble in the first place."[12] Specifical-

10. We in no way mean to disparage the effort of the District Court in this case to explain the basis for its sentence. It may be that in cases where the sentence is substantially greater than that usually meted out for a particular offense the District Court ought to explain the basis for the sentence. Compare North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In this connection, we note that we have previously said, in considering a bail application, "In modern times, at least, a life sentence for robbery, even armed robbery, occurs so rarely as to be fairly described as a transparent rather than substantial consideration." United States v. Alston, 136 U.S.App.D.C. 334, 337, 420 F.2d 176, 179 (1969).

11. President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 1 (1967).

12. American Bar Association Project on Minimum Standards for Criminal Justice, Sentencing Alternatives and Procedures 54–55 (approved draft 1968).

ly addressing itself to the length of sentences, the ABA Project urges that more attention be given to the individual defendant and less reliance be placed on general long term sentences:

"There is general agreement among most who have recently studied the patterns of sentencing in this country that the average sentence to prison is for a term in excess of what can reasonably be justified and that there are far too many long-term commitments. * * *

\* \* \* \* \* \*

"Excessive sentences do a serious disservice to the community which is supposed to be protected by them, not to mention their impact on the individual. * * * [I]n cases where protection of the public would not be served—and the Advisory Committee believes this to be close to ninety percent of those who are now committed to penal institutions—the Committee does not believe that a long sentence is reasonably justified. * * *" [13]

The judgment of conviction in this case is

Reversed.