**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles W. SEXTON, Defendant-
Appellant.**

**No. 71–2407.**

United States Court of Appeals,
Fifth Circuit.

March 20, 1972.

B. M. Waller, Montgomery, Ala., for defendant-appellant.

Ira DeMent, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., David B. Byrne, Jr., Montgomery, Ala., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

Charles W. Sexton has been convicted of violating various sections of the Internal Revenue Code relating to the unlawful possession, transportation, sale, and transfer of non-tax-paid distilled spirits, 26 U.S.C., §§ 5205(a) (2) and 5604(a) (1) [1] He appeals. Because of an occurrence which took place while the jury was attempting to report a verdict in open court we are compelled to reverse and remand for a new trial.

The evidence offered by the Government reflected the violations charged in the indictment, assuming that a jury should choose to accept it. The sum of the proof was that on July 26, 1970, Sexton assisted one Clarence Putt in the delivery and sale of fifty-one gallons of "good whiskey" to Preston Jackson, an undercover agent, witnessed by other agents. The transaction took place on a field road near Prattville, Alabama.

We find no merit in the assignments of error as to jury instructions, the refusal to allow the defendant to call the undercover agent as an adverse witness, and the denial of a judgment of acquittal.

We reach a different result as to what happened during the first attempt of the jury to report a verdict.

Seven minutes after the jury had retired to consider its verdict, the foreman notified the Court that a verdict had been reached. The jury returned to the courtroom and the Clerk of the Court read the guilty verdict. The defendant requested a poll. The following ensued:

"THE COURT: Mr. Bricken (foreman of the jury), was this the verdict of each member of the jury?

"JUROR: That is correct, sir.

"THE COURT: And it was your verdict—or was it your verdict?

"JUROR: Yes, sir.

"THE COURT: And would each of you now answer the question. I will go down the line. Was it your verdict?

"JUROR: Yes, sir.

"THE COURT: All right, next? Was it your verdict?

"JUROR: Yes, sir.

"THE COURT: Was it your verdict?

"JUROR: Yes, sir.

"THE COURT: *Was it your verdict?*

"JUROR: *I didn't vote either way.*

"THE COURT: *Well, is it your verdict?*

"JUROR: *Yes, sir.* [Emphasis supplied].

---

1. Title 26 United States Code, § 5205(a) (2) provides:
   Section 5205. Stamps.
   "(A) Stamps for containers of distilled spirits—
   \* \* \* \* \*
   "(2) Containers of other distilled spirits.—
   "No person shall transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof is stamped by a stamp evidencing the determination of the tax or indicating compliance with the provisions of this chapter \* \* \*"

Title 26, United States Code, § 5604(a) (1) provides:
   Section 5604. Penalties relating to stamps, marks, brands, and containers.
   "(A) General.—Any person who shall—
   "(1) transport, possess, buy, sell, or transfer any distilled spirits, required to be stamped under the provisions of Section 5205(a) (2), unless the immediate container thereof has affixed thereto a stamp as required by such section, or \* \* \* shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense."

"THE COURT: Do you want to ask that juror any questions, Mr. Waller?

"MR. WALLER: Judge, I think it is not a verdict.

"THE COURT: I am going to send the jury back to reconsider their verdict, and be sure that it is the verdict of each of you. It must be a unanimous verdict and you must vote on it.

"And, Mr. Bricken, if you will, take the verdict back, both verdicts back and consider it and the Court will hear you when you are ready to report.

"Thank you.

"If you will, take them back to the jury room.

(The jury left the courtroom).

"MR. WALLER: Judge, I would like to make a motion for a mistrial in that the jury has supposedly reported back and that it has been made known to the Court that one of the jurors did not participate in the verdict, did not vote for the verdict, and that being sent now back after having made such a statement and identified herself in open court that she would not be intimidated or restrained from making a proper and impartial verdict, and that such verdict would be hard for her to deliver, and the defendant should be granted a mistrial based on such procedure."

Soon thereafter, the jury returned from the second consideration of its verdict and the Clerk announced a unanimous verdict of guilty. Another poll showed that the verdict was then unanimous. The Court accepted the verdict. Counsel for appellant was allowed to question the foreman, who reported that the second verdict had resulted from a secret ballot of the jurors.

Relying mainly on Matthews v. United States, D.C.App., 1969, 252 A.2d 505, and on United States v. McCoy, 1970, 139 U.S.App.D.C. 60, 429 F.2d 739, appellant contends that his conviction should be reversed because the District Court's inquiry of the dissenting juror during the polling of the jury had a coercive effect towards a unanimous verdict.

In Matthews v. United States, *supra*, the appellant had been convicted by a jury of petit larceny and had been found not guilty of simple assault. After the foreman announced the jury's verdict, appellant's trial counsel requested that the jury be polled as to the petit larceny. When their names were called, eleven of the jurors simply answered "guilty". However, when the ninth juror was polled, the following colloquy took place.

"DEPUTY CLERK: Sarah I. Stackhouse.

"STACKHOUSE: Guilty. Your honor, can I ask about the pettit (sic) larceny?

"COURT: That is all, either guilty or not guilty.

"STACKHOUSE: I can't express myself any further.

"COURT: No, you can only—

"STACKHOUSE: *It is conditional.*

"COURT: *You have to answer either guilty or not guilty.* (Emphasis supplied).

"STACKHOUSE: Guilty."

Finding no assurance that the jury freely and fairly arrived at a unanimous verdict, the District of Columbia Court of Appeals reversed the appellant's conviction. The Court reasoned:

"In the instant case, when the juror stated that her verdict was conditional, the trial judge should have been alerted to the probability that there might not be unanimity in the verdict. Therefore, he should not have *required* the juror to answer 'either guilty or not guilty', but should have returned the jury to the jury room for further deliberation.

"The juror's subsequent statement of 'Guilty' did not serve to remove the uncertainty of her verdict since she was responding to the court's directive that 'you have to answer either guilty or not guilty'." 252 A.2d at 506. (Emphasis in original; footnote omitted).

■ It must be emphasized that in this case the juror, in effect, voted in the courtroom and not in the jury room and she voted under the compulsion of the Court.

In United States v. McCoy, *supra,* when the District Court's poll of the jury reached the eleventh juror, she responded to the clerk's request to "state yes or no whether or not your verdict is the same as that given by your foreman" with the answer: "Yes, with a question mark". Whereupon, the District Court instructed the juror to answer yes or no. She then answered "Yes". The trial court accepted the verdict without further inquiry or other action, over the objection of appellant's counsel. Distinguishing its decision in Williams and Coleman v. United States, 1969, 136 U.S.App.D.C. 158, 419 F.2d 740 (en banc) and following the reasoning of the Court in Matthews v. United States, *supra,* the District of Columbia Circuit Court of Appeals reversed the conviction.

Again, the juror was, in effect, required to vote in open court and without further deliberation with the other jurors.

The Government, in seeking our affirmance of Sexton's conviction, relies upon Jackson v. United States, 1967, 128 U.S.App.D.C. 214, 386 F.2d 641; Williams and Coleman v. United States, *supra,* and United States v. Brooks, D.C. Cir., 1969, 137 U.S.App.D.C. 147, 420 F. 2d 1350. The Government contends that the District Court properly exercised its discretion under Rule 31(d) of the Federal Rules of Criminal Procedure and that the facts indicate no coercion or prejudice to the appellant as a result of the trial judge's action.

The Court in Jackson v. United States, *supra,* considered the following colloquy between the Court and a juror during the polling of the jury:

"THE DEPUTY CLERK: Mrs. Aminta R. Knight, what say you as to the defendant on count one (Robbery) of the indictment?

"MRS. KNIGHT: I went along with the majority—guilty.

"THE COURT: What did you say?

"MRS. KNIGHT: I went along with the majority.

"THE COURT: Guilty?

"MRS. KNIGHT: Yes.

"THE DEPUTY CLERK: On count two of the indictment?

"MRS. KNIGHT: Guilty."

During the poll, Jackson's counsel remained silent. Only after the jurors had been dismissed and dispersed did he object to the verdict on the ground that Mrs. Knight's answers to the poll showed the robbery verdict not to be unanimous. The Court filed a written memorandum describing the circumstances of the jury poll, declaring itself "satisfied that the procedures followed were non-coercive, and that the verdict rendered was the free and considered decision of each individual member of the jury." In upholding Jackson's conviction on appeal, the appellate court said:

"In oral argument appellant's counsel referred to circumstances visible in the courtroom at the time of the poll which indicated the verdict to be less than unanimous. But if these circumstances were so plainly evident, it seems to us that they would, as they should, have been immediately called to the court's attention upon the record. Had that been done, any doubts whatever about the state of the jurors' minds could have been cleared up and appropriate action taken before the jury was dismissed. A principal office of the making of objections by counsel in adversary proceedings is not only to assure justice but also to achieve efficiency and expedition in its administration.

"Absent such a response by counsel to the alleged stress of the moment, we are not persuaded that, in the light of what is before us, we must disregard the Court's own characterization of the scene. * * *. Although the Court's inquiry did not perhaps ex-

haust the solicitude appropriate to a situation of this kind, particularly when the circumstances actually obtaining are difficult to communicate to an appellate court in a cold record, we are not prepared to say that the court erred in its appraisal at the time of the genuineness of Mrs. Knight's verdict."

Williams and Coleman v. United States, *supra*, represents a jury poll case in which the juror upon being asked "What say you as to the defendant Gerald Coleman on Count 1?" answered "Not guilty" several times before answering "Guilty". In *Williams and Coleman*, the District of Columbia Circuit Court of Appeals upheld the Government's contention that the juror was merely confused and that as soon as it was made clear to her which defendant of the three on trial was the subject of the poll, she unequivocally answered "Guilty". In sanctioning the trial judge's interrogation of the dissenting juror, the Court noted that there were substantial reasons for the juror's apparent confusion, saying:

> "The confusion from the switching of defendants was compounded by the obvious fact that both judge and jurors were having a hard time hearing the deputy clerk. Further confusion was provided by the necessity—because the clerk could not hear the juror's answer—for repeating the question on the Coleman verdict on Count 1."

In United States v. Brooks, *supra*, the District of Columbia Circuit Court of Appeals considered an appeal wherein the District Court had been confronted by a situation during the poll of the jury similar to that which had confronted the District Court in *Williams and Coleman*: "the complexity of the case, and perhaps the inadequate acoustics of the courtroom, created confusion among the jurors, and this fact was not revealed until the jury poll was in progress". (420 F.2d 1350, 1351). In *Brooks*, the first juror polled indicated disagreement with the announced verdict

of guilty. The Court halted the polling and suggested to the defense counsel that "I can throw that count out if you want me to", and defense counsel replied, "I would say yes, *but I would ask to have the rest of the jury polled*". The Court granted his request and continued the poll, which revealed a total of two dissenting jurors. After the Court questioned the two dissenting jurors in an attempt to determine the extent of their confusion and after the Court directed the jury to retire and deliberate further, the jury returned after twenty minutes of deliberation and announced a unanimous verdict of guilty. In rejecting the appellant's contention that his conviction must be reversed because of the allegedly coercive circumstances under which the jury was sent back for further deliberations after a poll of the jury revealed that two jurors had reservations about the verdict, the District of Columbia Circuit Court of Appeals began its evaluation of the Court's procedure with Rule 31(d) of the Federal Rules of Criminal Procedure and thereafter said:

> ". . . Clearly, this provision invests the trial judge with a measure of discretion in assessing the impact of a dissenting vote during a jury poll, and the reasonable exercise of this discretion should be accorded proper deference by a reviewing court. As we noted in Jackson v. United States, 128 U.S.App.D.C. 214, 386 F. 2d 641 (1967), the trial judge is in a much better position than an appellate tribunal to determine whether a recalcitrant juror's eventual acquiescence in a verdict was in fact freely given. The *Jackson* case also indicates that defense counsel play a crucial role in interposing timely objections to potentially coercive procedures both for the purpose of assisting the trial judge in choosing the best method of resolving an extremely delicate situation, and for the purpose of preserving in the record all relevant facts needed to support intelligent appellate review. In the instant case it is significant

that appellant's able trial counsel, who was sufficiently familiar with the problems of jury coercion to be able to cite the *Mullin* case from memory, not only failed to object to the questioning of the jury but also requested that polling continue after the jury's apparent lack of unanimity was revealed. We are not convinced that the events which occurred after this request were so coercive of the jurors' free will as to constitute reversible error."

Rule 31(d) of the Federal Rules of Criminal Procedure provides:

"(d) Poll of jury.

"When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

■■ We agree with the principles announced in United States v. Thomas, D.C.Cir., 1971, 449 F.2d 1177, 1181:

"Every defendant in a federal criminal case has the right to have his guilt found, if found at all, only by the unanimous verdict of his peers. Any undue intrusion by the trial judge into this exclusive province of the jury is error of the first magnitude. When efforts to secure a verdict from the jury reach the point that a single juror may be coerced into surrendering views conscientiously entertained, the jury's province is invaded and the requirement of unanimity is diluted." (Footnotes omitted.)

The right of the Court on its own motion, or the right of any party, to have the jury polled, as established by Rule 31(d),

"is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has

in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he had not fully assented." (Citing cases). Miranda v. United States, 1 Cir., 1958, 255 F. 2d 9, 17.

However, that the polling procedure may itself create a coercive situation was pointed out by the dissenting members of the Court in Williams v. United States, 1969, 136 U.S.App.D.C. 158, 419 F.2d 740, 751–752.

"Unfortunately, however, sometimes the polling procedure itself creates a coercive or confusing situation. Thus in Bruce v. Chestnut Farms-Chevy Chase Dairy, 75 U.S.App.D.C. 192, 126 F.2d 224 (1942), a civil case, the jury returned a verdict for the defendant. When polled, two jurors stated their verdicts to be for the plaintiff. The Court repeatedly questioned them, and eventually they declared their verdict to be for the defendant. The judge then accepted the verdict. The Court of Appeals held that accepting the verdict was error because there was strong indication that the jury was not unanimous and the repeated efforts of the judge to obtain a unanimous verdict had a coercive effect."

■ The safe procedure for conducting a jury poll free of coercion pursuant to Rule 31(d) of the Federal Rules of Criminal Procedure was sufficiently and accurately stated by the Court in Bruce v. Chestnut Farms-Chevy Chase Dairy, 1942, 75 U.S.App.D.C. 192, 126 F.2d 224, 225, notwithstanding that the case was a civil action. There, it was said:

"There can be no question of the right of a juror, when polled, to dissent from a verdict to which he has agreed in the jury room, and when that happens, the jury should either be discharged or returned to their room for further deliberation. It is both unwise and undesirable that the Court should enter into an argument with the juror or require an explanation of his change of position. To an

even greater degree is it improper to allow counsel to interpose and question the reasons or motives of the juror in changing his mind. The correct practice, when a poll of the jury is asked, is for the clerk to call the roll and ask each juror as his name is called to answer—for the plaintiff, or —for the defendant, and if the responses of the individual jurors are not in complete agreement, the jury should be required to retire and give further consideration."

This procedure was recently approved by the Fifth Circuit in United States v. Bendicks, 5 Cir., 1971, 449 F.2d 313, 315, where the Court considered an appellant's contention that the verdict was not unanimous. In finding no error we described the District Court procedure:

"The jury returned a verdict finding the appellant sane. At the request of defense counsel, the jury was polled and one member thereof declared that he had reached an opposite verdict. The District Judge then instructed the jury to retire and resume deliberations as the verdict was not acceptable. Upon further deliberation the jury again returned a verdict of sanity and, as before, was polled. All jurors stated that the verdict as read was their true verdict. Defense counsel thereupon accepted the poll as satisfactory."

The trial court in the instant case was doubtless taken by surprise when the lady juror unexpectedly announced that she had not voted, although she must have returned voluntarily to the courtroom, knowing what was about to be announced.

If the Court had simply stated that the verdict could not be accepted because it was not unanimous and had returned the jury for further deliberation there would have been no error. This, of course, is more easily seen by hindsight.

Upon the impact of the moment, however, after the lady had announced that she did not vote, the Court asked her:

"Well, is it your verdict?"

She replied, "Yes".

Thus, although it may not have been so considered at the time, she was required to vote publicly in open court rather than in the jury room, after further deliberation, as prescribed by Rule 31.

It is regrettable that this mishap at the very close of the case should require a new trial. Litigation always has such hazards, however, and the situation here may be speedily remedied by a new trial. Possibly this occurrence would justify more emphasis in jury charges that verdicts must be unanimous, eliminating a future occurrence of a similar nature.

The judgment of the District Court is reversed and the case remanded for a new trial.

Reversed and remanded.