UNITED STATES of America, Appellee,

v.

Gary D. LEE, Appellant.

No. 75–1888.

United States Court of Appeals,
Third Circuit.

Argued Feb. 5, 1976.

Decided March 22, 1976.

---

John F. McMahon, First Asst. Federal Public Defender for the District of New Jersey, Newark, N. J., for appellant.

Jonathan L. Goldstein, U. S. Atty., Maryanne T. Desmond, Asst. U. S. Atty., Newark, N. J., for appellee.

Before SEITZ, Chief Judge, and VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Though justice should be tempered with mercy, the guilty verdict of a jury may not be conditioned upon the compassion of a sentencing judge. The defendant in this case contends that a jury's note pleading for leniency raised the specter of an equivocal verdict and required the trial judge to question the jurors on their intentions. The judge declined to do so and we conclude that his decision was not erroneous. We disagree with the defendant's other assertions that certain evidentiary rulings were incorrect and, accordingly, we affirm.

After a jury was unable to agree on a verdict, the defendant was tried a second time and convicted of embezzling and unlawfully opening first class mail in violation of 18 U.S.C. §§ 1709 and 1703(a). Most of the prosecution's testimony was presented by postal inspectors who investigated complaints of theft of mail from the Livingston,

New Jersey Post Office where defendant was employed as a postal clerk. One of the inspectors' techniques to discover the culprit was the use of "test letters." An envelope containing currency and addressed to a post office box controlled by the inspection service would be handed to a window clerk for mailing. From a concealed position in an observation gallery, inspectors would then follow the progress of the envelope from station to station.

The procedure was utilized in this case. An undercover inspector handed a test letter to the defendant who was on duty at his assigned window. From the gallery other inspectors saw the defendant leave his post and return a few minutes later. Thereafter several of the inspectors confronted the defendant, found the marked money in his possession and arrested him. The defendant took the stand and denied any wrongdoing.

The jury deliberated for about 12 hours before returning a verdict of guilty, together with a note asking the court to exercise extreme leniency. The jurors were polled and all answered in the affirmative when asked if they concurred in the verdict of guilty as read by the forelady.

Defense counsel then suggested that the trial judge ask the jurors whether their request for leniency was controlling in the determination of guilt. After a bench conference, the judge declined to do so. The defendant now asserts that the refusal to make inquiry of the jurors and several evidentiary rulings constitute error requiring a new trial. Additionally, he contends that the sentence imposed was an abuse of discretion.

. In a federal criminal trial, a verdict must be unqualified and unambiguous. It must represent the unanimous vote of the jurors. A trial court may not accept a verdict if it is defective but must either direct the jury to retire for further deliberation or declare a mistrial.

The defendant contends that "serious doubt is left whether this jury did not qualify its verdict by predicating and conditioning it on the request for leniency." Some elaboration of the circumstances of the jury deliberation is helpful.

The jury began its deliberations at 1:15 P.M. on June 6, 1975. During the course of the afternoon, the jury sent notes to the judge requesting information about the testimony of certain witnesses. On each occasion the court convened and made appropriate responses in the presence of counsel and the defendant. In the early evening, the judge told the jurors he would arrange their hotel accommodations for the night. The jurors, however, requested additional time for deliberation. At 10:15 P.M. they sent a note stating that they had not been able to reach a unanimous vote, and asked for additional instructions. A little later they sent another note indicating that a minority had said it would not change its position.

The judge then gave a charge on reasonable doubt and the duty to deliberate with a view to reaching agreement if possible.[1] At 12:25 A.M. the jurors asked that they be allowed to deliberate until 1:00 A.M. Soon thereafter they told the bailiff that they had reached a verdict.

When the court convened at 12:50 A.M., the forelady handed the verdict slip and a note which was on a separate piece of paper to the clerk. The judge read both and returned them to the forelady.

The clerk then inquired:

"THE CLERK: Madam Forelady, how say you? Do you find the defendant Gary D. Lee guilty or not guilty as he stands charged on Count 1?

"THE FORELADY: We find him guilty."

There was a similar response to Count 2.

After defense counsel asked for a poll, the clerk said:

---

1. The court used the charge set out in Mathes and Devitt, Federal Jury Practice and Instructions § 79.01 (1965), and approved by this court in *United States v. Fioravanti*, 412 F.2d 407 (3d Cir. 1969). No one objected to this supplementary charge.

"THE CLERK: Ladies and Gentlemen, as I call your name kindly indicate whether or not you concur in the verdict as rendered by your forelady."

The transcript continues:

"(The jurors are polled. All jurors answer in the affirmative.)"

"THE COURT: All right. A verdict of guilty will be entered. You have a note for me, madam?"

"THE FORELADY: I believe—"

"THE COURT: Mr. Tosti, take that note, please, from the forelady and I shall read it into the record."

"(Note handed to the Court.)"

"THE COURT: 'Your Honor, we have deliberated diligently with the facts available and have come to the conclusion that although we have voted guilty we implore the Court to exercise extreme leniency. Thank you.' And it is signed by each one of the jurors."

 In the usual case, the jury has no authority to recommend what sentence should be imposed, but it is not uncommon that a plea for mercy accompany the verdict. Generally, such a recommendation does not affect the validity of the verdict and may be disregarded as surplusage.[2] *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *United States v. Phillips*, 426 F.2d 1069 (2d Cir.), *cert. denied*, 400 U.S. 843, 91 S.Ct. 86, 27 L.Ed.2d 78 (1970); *Krull v. United States*, 240 F.2d 122 (5th Cir.), *cert. denied*, 353 U.S. 915, 77 S.Ct. 764, 1 L.Ed.2d 668 (1957). *See also* 2 C. Wright, Federal Practice and Procedure § 512.

Defendant asserts that exceptional circumstances are present here and that *Cook v. United States*, 379 F.2d 966 (5th Cir. 1967), requires the trial judge to interrogate the jurors about the verdict.

In *Cook*, the foreman wrote a finding of guilty on the verdict slip and then added at the bottom of the page:

"This Jury, however, respectfully request that this court give to [defendant] every degree of leniency possible.
s/Carl W. Ethridge
Foreman."

The trial judge then advised the jury that, before sentence was imposed, presentence reports would be prepared. The jury was polled, and the first juror replied: "I was reluctant to at the beginning; I voted guilty." The third juror and eight others answered: "Guilty based on the note at the bottom." The judge refused defense requests to ask the jury whether the vote was qualified by the note or whether the vote would be for conviction if the jurors were advised that a recommendation was not a subject for their consideration. On review, the Court of Appeals stated that:

1. in general, recommendations by the jury for clemency were surplusage;

2. where there were exceptional circumstances strongly suggesting "that there would have been no agreement as to the verdict unless the recommendation of leniency was also accepted, the effect of the recommendation steadfastly adhered to on the poll, was to nullify the verdict";

3. the coincidence of the three factors present in that case—the wording of the jury's verdict, the court's comments to the jury upon receipt of the verdict, and the jurors' responses upon being polled—created a "lack of definite and precise meaning" of the verdict sufficient to require the court's inquiry for purposes of clarification; and

4. the court's failure to do so at the defendant's request and when it had adequate opportunity constituted reversible error.

 The *Cook* case appears to be *sui generis* in federal decisional law and, because it is distinguishable, we need not decide if it should be followed in this circuit. Unlike

---

**2.** We are not concerned here with the problem that arises when a judge responds affirmatively to a jury's question as to whether a recommendation of mercy is permissible. *See e. g., United States v. Glick*, 463 F.2d 491 (2d Cir. 1972). In the case at bar, there was no intimation of the jury's action until the verdict slip was handed to the judge.

*Cook,* the jurors in the case *sub judice* when polled indicated their agreement with the guilty verdict without equivocation or qualification whatsoever.

Moreover, the language chosen by the jurors is significantly different from that used in *Cook.* Here, the recommendation was ". . . that although we have voted guilty, we implore the court to exercise extreme leniency." This is a recognition that the vote indeed is for a guilty finding—with no indication that it is conditional. "Implor[ing]" the court sounds like nothing more than a plea containing no element of contingency.

■ Making inquiries of the jury, as the defense requested, is not to be encouraged because it threatens the secrecy of jury deliberations and invites charges of coercion and interference with the jury function by the trial judge. Responses by individual jurors to the court's questions are unpredictable, and a dialogue, once begun, is often difficult to stop before it causes damage. In *United States v. Sexton,* 456 F.2d 961, 966–967 (5th Cir. 1972), the same Court of Appeals which decided the *Cook* case quoted approvingly from *Bruce v. Chestnut Farms-Chevy Chase Dairy,* 75 U.S.App.D.C. 192, 126 F.2d 224, 225 (1942):

> "It is both unwise and undesirable that the Court should enter into an argument with the juror or require an explanation of his change of position. To an even greater degree is it improper to allow counsel to interpose and question the reasons or motives of the juror in changing his mind."

In the *Sexton* case, the judge's questioning of a juror led to reversal. The opinion cites a number of cases in which inquiries were held to be coercive.

■ If, during the poll, a doubt arises about the unanimity of the jury verdict, the preferred course of action by the trial judge is set out in Federal Rule of Criminal Procedure 31(d): he should either declare a mistrial or send the jury back for further secret deliberation.

The trial judge did not err, but acted prudently in refusing to question the jurors. In view of the tone of the note written by the jury and the unconditional assent to the guilty verdict during the poll, we hold that the judge did not abuse his discretion in not ordering further deliberations *sua sponte.*

The defendant also argues that the district court erred in refusing to permit his testimony on a series of personal disagreements with the local postmaster. Through these disagreements, the defendant hoped to show that the postmaster had reason to "frame" him. The same judge presided at the earlier trial and had permitted the defendant to testify about the reasons for animosity between him and the postmaster. Essentially, the testimony detailed incidents in which the defendant had pressed grievances in his capacity as a union official, questioned the postmaster's integrity, and caused him considerable embarrassment. However, the defendant had not been able to show that the postmaster's personal dislike for him had in any way affected the investigation by the postal inspectors who had testified for the government.

■ At the second trial, the government produced testimony that the inspectors were not subject to the control of the local postmaster but were responsible to their superiors in Washington. The defendant was not restricted in cross-examination of the government witnesses and was free to show bias or prejudice on their part. The postmaster did not testify in the prosecution's case. During the defense, the judge ruled that the unpleasant incidents between the defendant and postmaster were collateral to the real issues in the case and would distract the jury from them. In any event, the defendant was permitted to testify that he had presented grievances to the postal service, and specifically that there had been a dispute about auditing procedures. However, he was not permitted to review other incidents. Defendant did testify that he was "framed," and his counsel argued that point to the jury. An examination of the record reveals no offer of testimony connecting the postmaster with the alleged

916

plot and, consequently, the trial court did not err in excluding the collateral matters.

Additionally, the defendant contends that the trial court erred in refusing to admit into evidence certain photographs and a hearsay statement contained in a post-arrest report. We find no error in those rulings.

■ The trial court imposed a one-year prison sentence on the defendant despite the jury's recommendation of leniency. Defendant argues that this is an abuse of discretion. The sentence was within the statutory limitation, and we may not review it.[3] *Government of the Virgin Islands v. Venzen*, 424 F.2d 521 (3d Cir. 1970).

The judgment will be affirmed.

---

3. We note that the defendant may apply to the District Court for reduction of sentence under Fed.R.Crim.P. 35.