UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank D'ANGELO, Richard Delcazal and
Wade A. Freman,
Defendants-Appellants.

No. 78–5737
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 16, 1979.

Eduardo R. Rodriguez, Brownsville, Tex., Frank G. DeSalvo, Metairie, La., for defendants-appellants.

J. A. Canales, U.S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U.S. Attys., Houston, Tex., John Patrick Smith, Asst. U.S. Atty., Brownsville, Tex., Emilio Davila, Jr., Asst. U.S. Atty., Laredo, Tex., for plaintiff-appellee.

Before CLARK, GEE and HILL, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The appellants, Frank D'Angelo, Richard Delcazal and Wade A. Freman, were tried together and convicted on different offenses arising from a scheme to distribute marijuana.[1] We affirm the convictions.

Appellants Delcazal and Freman raise two issues on appeal. First, they argue that the district court erred in allowing the government's chief witness—a co-conspirator not indicted by the grand jury—to testify concerning a marijuana delivery that was *allegedly intended originally* for Delcazal but was diverted to another buyer.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

1. All three appellants were indicted along with fourteen other persons for conspiracy to possess marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), 846. Decazal and Freman were also indicted on one substantive count of possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1). Decazal was additionally charged with three counts of the use of a communication facility to facilitate the distribution of marijuana, 21 U.S.C. § 843(b). D'Angelo, Decazal and Freman were granted a severance from the other fourteen co-defendants and were tried together before a jury. The jury found the defendants guilty on all counts.

No objection was made to the testimony at trial and there was no error in its admission. The testimony was evidence of overt acts committed by other conspirators during the life of the conspiracy and as such was admissible. *United States v. Elliot*, 571 F.2d 880, 911 (5th Cir. 1978); *United States v. Perez*, 489 F.2d 51, 70 (1973), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).

■ Second, Decazal and Freman claim error in the district court's refusal to grant a motion for an indefinite continuance to obtain the presence of a witness the defendants had first tried to locate only three days prior to trial. The court denied the motion on the grounds that the defendants had failed to exercise due diligence in attempting to procure the witness. The exercise of due diligence is a prerequisite to the grant of such motions. *United States v. Uptain*, 531 F.2d 1281, 1286 (5th Cir. 1976). A district court's ruling on such a motion will not be disturbed unless an abuse of discretion is shown. *United States v. Smith*, 591 F.2d 1105, 1110 (5th Cir. 1979). No abuse of discretion occurred here.

■ The sole issue raised on appeal by the appellant D'Angelo concerns a note sent to the trial judge by the jury after the jury reached its verdict. The note reads:

> We have had great difficulty deciding and coming to agreement about Frank D'Angelo and have decided as we did only because we believe *he* knew about the

transactions and thus was a conspirator. (Emphasis by the jury)

After discussing the significance of the note with counsel out of the jury's presence, the court decided that the note could not impeach the jury's general verdict of guilty. The jury was brought into the courtroom and polled, and all jurors adhered to the verdict. None of the jurors made any reference to the note or in any other way attempted to qualify or elaborate on the verdict.[2]

We cannot divine with certainty why the jury sent the note or what it was intended to mean. It is entirely possible that the note means what D'Angelo claims it means: that the jury found D'Angelo guilty only because he *knew* about the transactions and thus was a conspirator. Willful participation is an essential element of the crime of conspiracy; mere knowledge of a conspiracy does not itself make a person a conspirator. *E. g., United States v. Binetti*, 552 F.2d 1141 (5th Cir. 1977). If the jury convicted D'Angelo on the basis of knowledge alone, it misapplied the law.

The possibility that the jury misunderstood or even intentionally misapplied the law, however, does not warrant reversal of the conviction. D'Angelo's attack on the verdict is an attempt to expose the jury's collective mental process to judicial scrutiny. There is no claim that the court erred in giving the law to the jury as it did. In

2. Defense counsel present in the courtroom when the judge received the note neither requested nor suggested any procedure different from that followed by the court. Before bringing the jury back into the courtroom, the court heard comments on the note from D'Angelo's counsel, the counsel for the other defendants, and the prosecutor. After rereading the note aloud several times, the court stated that the jury appeared to be attempting to explain its verdict. Mr. Zibilizh, counsel for Freman, noted that the contents of the note "could fly in the face of the law" as the judge gave it, stating that "just because somebody knew of a transaction doesn't make him a conspirator necessarily." Following up on Mr. Zibilizh's comment, the judge agreed that the jury would have to find that D'Angelo was a willful participant before it could convict him. A dialogue then took place between the judge and Mr. Rodriguez, D'Angelo's counsel. The judge spoke of the note as the jury's "mental processes working," and Mr. Rodriguez agreed, stating that "There seems to be some doubt or there's something in the back of their mind." It was not suggested by D'Angelo's counsel or any of the other lawyers present that the court declare a mistrial or send the jury back for more deliberation. Nor was there any effort to seek to interrogate the jurors to determine the purpose of the note, a procedure condemned in *United States v. Sexton*, 456 F.2d 961, 965–67 (5th Cir. 1972). *See also United States v. Lee*, 532 F.2d 911, 915 (3rd Cir. 1976). All counsel agreed with the court that the proper course of action was a jury poll. D'Angelo's counsel did not attempt to impeach the jury's verdict on the basis of the note until post trial motions were filed for a directed verdict of acquittal or new trial.

fact the court's instructions placed heavy emphasis on the necessity of a finding of willful participation in the conspiracy. There is no claim that evidence of knowing participation did not exist. Indeed, there could not be such a claim for there was testimony by a government witness of direct dealings with D'Angelo. There is no claim that the jury was corrupted by some extraneous influence, that the verdict was not unanimous, or that the verdict was anything other than a general verdict of guilty.[3] Rather, D'Angelo's attack on the verdict is, as the trial judge characterized it, an attempt to use the jury's note to probe its process of deliberation and find out how and why the jury reached its verdict. That is the one form of attack on a verdict that has always been forbidden in Anglo-American criminal law.

A jury has an obligation to follow the law as it is given by the trial court, but it is a peculiar facet of the jury institution that once a verdict is rendered, no judicial inquiry is permitted into the jury's deliberative process to determine if in fact the court's instructions were properly followed. As the Supreme Court noted long ago, in that limited sense a jury passes both on law and fact, for " 'in practice, the verdict of the jury, both upon the law and the fact, is conclusive; because, from the nature of the proceeding, there is no judicial power by which the conclusion of law thus brought upon the record by that verdict can be reversed, set aside, or inquired into.' " *Sparf v. United States*, 156 U.S. 51, 80, 15 S.Ct. 273, 285, 39 L.Ed. 343 (1895) (quoting from *Com. v. Anthes*, 5 Gray 185).

Severe limitations exist on all attempts "to breach the shroud surrounding jury deliberations," *United States v. Gipson*, 553 F.2d 453, 457 (5th Cir. 1977). The rule of the common law is that a juror may not impeach his verdict. *E. g., McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *United States v. Blackburn*, 446 F.2d 1089, 1091 (5th Cir. 1971); *Dickinson v. United States*, 421 F.2d 630, 632 (5th Cir. 1970). The sanctity of the verdict may be impugned only by evidence of improper external influences on the jury's decision, *e. g., Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); *Stimack v. Texas*, 548 F.2d 588, 589 (5th Cir. 1977); *United States v. Howard*, 506 F.2d 865, 868 (5th Cir. 1975), or by a post-verdict determination that the evidence did not warrant submission to the jury in the first instance. Inquiry into the conscience or compliance of jurors, by contrast, requires inquiry into a matter that essentially inheres in the verdict, *Mattox v. United States, supra*, 146 U.S. at 149, 13 S.Ct. at 53, and is thus strictly forbidden. *See United States v.*

---

**3.** Because there is no question in this case as to what the jury's verdict actually was or as to whether or not it was unanimous, it is different in kind from cases in which a jury sends a note to a judge that casts suspicion on whether the verdict is unqualified or unanimous. Such cases usually involve a verdict accompanied by a jury request for leniency. *See e. g., Cook v. United States*, 379 F.2d 966 (5th Cir. 1967); *Krull v. United States*, 240 F.2d 122 (5th Cir. 1957); *United States v. Lee*, 532 F.2d 911 (3rd Cir. 1976); *Thlinket Packing Co. v. United States*, 236 F. 109 (9th Cir. 1916). Such a request is normally regarded as surplusage. 8A Moore's Federal Practice ¶ 31.02[3]. A request by the jury for clemency does not invalidate the verdict and may be disregarded by the court. *Krull v. United States, supra*, 240 F.2d at 133; *United States v. Lee, supra*, 532 F.2d at 914–15.

It is true that in *United States v. Cook, supra*, a conviction was reversed because of circumstances that included a jury request for lenien-

cy. However, in *Cook*, the jury found a defendant guilty but included an asterisk on the verdict which referred to a footnote requesting "every degree of leniency possible." When polled, ten of the jurors responded to the question guilty or not guilty by answering, "Guilty, based on the note at the bottom." On appeal this court held that the note, coupled with the conditional answers given by the jurors when polled, created doubt as to what the verdict actually was and to whether or not it was unanimous. *Cook* held that it was error to deny defense counsel's requests for a second poll, or for further jury deliberations accompanied by an instruction that the jury had no power to control the sentence once a verdict was returned. *Cook* has been described as "*sui generis* in federal decisional law." *United States v. Lee, supra*, 532 F.2d at 914. Unlike *Cook*, in the case at bar neither the note nor the jury poll suggest any irregularity intrinsic to the actual verdict.

*Howard, supra,* 506 F.2d at 868 n. 3; *Miller v. United States,* 403 F.2d 77, 83 n. 11 (2nd Cir. 1968). With the exception for evidence concerning extraneous influence, the Federal Rules of Evidence bar juror testimony "as to any matter or statement occurring during the course of the jury's deliberation or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental processes in connection therewith." Fed.R. Evid. 606(b).

The necessary consequence of the rule against examination of the jury's mental process is that convictions must stand despite the presence of plausible suspicion that the jury's mental process was ill-conceived. In *Davis v. United States,* 47 F.2d 1071 (5th Cir. 1931), for example, a conviction was upheld despite the post-trial testimony of two jurors that the jury had considered the defendant's failure to take the stand in his own defense as evidence of guilt, and that the jurors had not heard the trial court's instruction that the jury was not to consider or discuss the defendant's failure to testify. Relying on *McDonald v. Pless, supra,* the court held that the improper argument of jurors within the jury room was not grounds for upsetting a verdict. 47 F.2d at 1072.

"[T]he essential feature of a jury lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen." *Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1970). To preserve that essential feature, the law trusts that a jury will understand and follow the law as instructed, and it indulges the jury when apparent gaps in understanding or logic later surface.[4] A jury, for example, may render logically inconsistent verdicts on different counts of an indictment or as to different co-defendants. It is not the duty of the court "to unravel the ratiocinations of the jury's collective logic." *Odom v. United States,* 377 F.2d 853, 857 (5th Cir. 1967). Nor may a court speculate that a verdict may have been the result of compromise, mistake or even carelessness. *United States v. Dotterweich,* 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48 (1943); *Dunn v. United States,* 284 U.S. 390, 393–94, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932). "Juries may indulge in precisely such motives or vagaries." *United States v. Dotterweich, supra,* 320 U.S. at 279, 64 S.Ct. at 135. If courts were permitted to retry such verdicts, the result would be that every jury verdict would either become the court's verdict or would be permitted to stand only by the court's leave. This would destroy the effectiveness of the jury process which substantial justice demands and the constitution guarantees.

All convictions are

AFFIRMED.

---

**4.** Professor Moore writes: "There must come a time when the temptation to analyze and fragment a jury verdict must yield to the perspective that lack of perfection inheres in the jury system." 8A Moore's Federal Practice ¶ 31.-08[1][a].