**William RONSON, Petitioner,**

v.

**COMMISSIONER OF CORRECTION OF the STATE OF NEW YORK, Respondent.**

**No. 77 Civ. 1044.**

United States District Court, S. D. New York.

Dec. 21, 1978.

Irving Anolik and Frederick H. Block, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for respondent; Gerald J. Ryan, Asst. Atty. Gen., New York City, of counsel.

LASKER, District Judge.

The New York Criminal Procedure Law, Section 250.10, provides that written notice of an insanity defense must be served on the prosecution and filed with the court before trial and not more than thirty days after the entry of a not guilty plea unless the court determines that the assertion of such a defense at a later time is "in the interest of justice and for good cause shown."[1] This petition for a writ of habeas corpus presents the question whether the denial by a trial judge of an application to assert a defense of temporary insanity after the statutory time period had elapsed deprived William Ronson of his right under the Sixth and Fourteenth Amendments to have compulsory process for obtaining witnesses in his favor and to testify in his own defense as to his alleged insanity.[2]

[1] On September 11, 1972, William Ronson, who was engaged in a long and bitter dispute with his estranged wife over the custody of their children, shot and killed her in the lobby of her apartment building. Ronson surrendered to the police on the following day. Shortly after his arrest, Ronson was examined by two psychiatrists at Bellevue Hospital who found him competent to stand trial but also described him as having a "personality pattern disorder of the paranoid type".[3] (Opinion of Trial Judge, April 23, 1975, p. 2) However, Ronson's attorney did not file a notice of intent to rely on an insanity defense at this stage of the proceedings.[4]

---

1. Section 250.10 provides, in full:
   "Evidence of mental disease or defect of the defendant excluding criminal responsibility pursuant to section 30.05 of the penal law is not admissible upon a trial unless the defendant serves upon the people and files with the court a written notice of his intention to rely upon such defense. Such notice must be served and filed before trial and not more than thirty days after entry of the plea of not guilty to the indictment. In the interest of justice and for good cause shown, however, the court may permit such service and filing to be made at any later time prior to the close of the evidence."
   N.Y.Crim.Proc.L. (McKinney 1971)

2. In *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court held that the Sixth Amendment's right to compulsory process applied to the states through the Fourteenth Amendment.
   While the right to compulsory process is phrased specifically in terms of securing the testimony of third parties, the provision has been defined broadly to represent the fundamental right to present a defense and therefore surely encompasses the right of a defendant to testify on his own behalf. See *Washington v.*

*Texas, supra*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019:
   "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

3. Ronson asserted his Fifth Amendment privilege against self-incrimination as to the circumstances surrounding the shooting, and therefore the Bellevue psychiatrists' report did not examine his state of mind at the time of the incident.

4. The attorney who then represented Ronson was later disbarred for professional misconduct involving conversion of the petitioner's money. (Magistrate's Report at 9) The Magistrate ruled, and we adopt her ruling, that to the extent that Ronson is now seeking to raise a claim of *ineffective assistance of counsel* he is

Ronson was represented by a succession of attorneys from the time of his arrest until the fall of 1974, when he retained Irving Anolik who has represented him at all stages of the proceedings since.[5] Anolik arranged for Ronson to undergo a second psychiatric examination by Dr. David Abrahamsen who determined that Ronson was able to stand trial but also stated in his report:

"It is my considered opinion that William Ronson is not responsible for his criminal act, because at the time of this act, as a result of suffering from a schizophrenic condition he lacked substantial capacity to know or to appreciate the wrongfullness [sic] of his conduct or to conform his conduct to the requirement of the law." (Petition, p. 2)

The examination before Dr. Abrahamsen took place in October of 1974.[6]

Ronson's first trial began in February of 1975. Anolik made an oral application during trial to introduce evidence relating to a defense of insanity but was allowed by the court only to introduce evidence in support of a defense of extreme emotional disturbance (Trial Transcript, February 19, 1975, pp. 242–46, 361–65, 555–57, 561–65). This proceeding ended in a mistrial when the jury was unable to reach a verdict. On March 7, 1975, after the first trial had ended, Anolik sent the Assistant District Attorney handling the case the following letter:

"We wish to advise you that should there be a retrial of the RONSON case, that [sic] the defendant reserves the right to interpose a specification of temporary insanity as a possible defense.

"It is doubtful that I shall try the case, as I explained in open court when the mistrial was declared.

"I ask nevertheless that you take due notice of the foregoing and govern yourself accordingly."

Although Anolik did continue to act as Ronson's attorney, he made no further mention of an insanity defense until April 22, 1975, during the selection of the jury for the second trial. After eleven jurors had been questioned and sworn, Anolik, while examining the twelfth juror, mentioned the possibility of an insanity defense. The prosecutor objected, and a colloquy was held with the judge during which Anolik formally moved to interpose a defense of temporary insanity. After oral argument, the judge denied the request in a written decision, the rationale of which is elaborated below. The trial proceeded, and Ronson was found guilty of first degree manslaughter and sentenced to an indeterminate term of imprisonment with a minimum of seven years and a maximum of twenty-one.

Following affirmance of the conviction on appeal, Ronson filed this petition for a writ of habeas corpus. The petition was referred to Magistrate Gershon who recommended in a lengthy opinion that the writ be granted on the ground that preclusion of the insanity defense violated Ronson's Sixth and Fourteenth Amendment rights.[7] Although the Magistrate found

barred for failure to exhaust state remedies. *Ennis v. LeFevre*, 560 F.2d 1072, 1076 (2d Cir. 1977). (See Magistrate's Report at 13).

5. The court did, however, appoint another attorney to represent Ronson at the habeas hearing during which Anolik was questioned about his failure to file formal notice of an insanity defense.

6. There is considerable confusion about when, if ever, a copy of Dr. Abrahamsen's report was given to the prosecutor. In his motion to introduce an insanity defense at the second trial, Anolik stated to the court that, in January of 1975, the judge then handling the case informed the defense that the court's copy of the report would be given to the Assistant District Attorney. Anolik also stated, however, that he believed the judge never did, in fact, deliver the report to the prosecution. (Transcript of April 22, 1975, pp. 6–7) Nevertheless, Anolik argues, and his argument is supported by the record (Trial Transcript of February 19, 1975, pp. 241–44; and Testimony at Habeas Hearing of September 22, 1978), that even if the prosecutor never saw the report itself, he knew of its existence and its general contents long before the second trial.

7. In his habeas petition, Ronson challenges two rulings by the trial judge: (1) the denial of the motion to assert a temporary insanity defense; and (2) failure to permit the defendant to impeach the trial testimony of his son, Michael

that an evidentiary hearing was not necessary, this court nevertheless held a hearing on September 22, 1978, to consider the circumstances surrounding Ronson's failure to give the State formal notice and the question of what prejudice would have been incurred by the State had a continuance been granted to allow it to respond to a defense of insanity. On the basis of the excellent report of Magistrate Gershon and the facts set forth in this Memorandum, we hold that the writ should be granted.

### I.

■ The State argues at the outset that, under several recent Supreme Court decisions, Ronson is barred from raising his Sixth Amendment claim in a federal habeas corpus proceeding absent a showing of cause for noncompliance with the New York notice rule and a showing of actual prejudice. See *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). We believe that these cases are distinguishable.

In all of these cases the habeas petitioners raised constitutional challenges to pretrial proceedings, asserting them for the first time after trial despite applicable procedural rules which required that the objections be raised before trial. The Court held that under those circumstances federal habeas review was not available to the peti-

tioners unless they could establish both good cause for noncompliance and actual prejudice resulting from the alleged constitutional violation.

In *Wainwright*, the most recent of the decisions, the Court set out at length its reasons for imposing this test in place of the earlier and more easily satisfied "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The Court expressed the fear that the *Fay* rule permitted "sandbagging" by defense attorneys, that is, holding constitutional objections in reserve to present to a federal habeas court in the event that their clients were convicted at trial, and thus encourages lawyers to treat trial as a "tryout" for habeas review rather than as the "main event".[8]

However, the facts here differ significantly from those in the three Supreme Court decisions. Ronson was confronted with a state procedural statute which, by its own terms, permits a trial judge, in his discretion, to allow assertion of an insanity defense "at any later time prior to the close of the evidence." Ronson presented the trial judge squarely with the question whether he should be allowed to assert the defense and, when the judge ruled against him, objected. Thus, unlike the petitioners in the Supreme Court cases, Ronson asserted his right at trial rather than holding it in reserve. Moreover, his constitutional claim here is based directly on the judge's ruling at trial rather than the events at a pretrial

---

Ronson, by reading the child's grand jury testimony which the petitioner contends was inconsistent with his testimony at trial.

We find that the petitioner has exhausted his state remedies with regard to both claims. (See Brief for Defendant-Appellant before the Appellate Division, pp. 16–25 and 28–29; Magistrate's Report pp. 14 and 3) However, we agree with the Magistrate that Ronson's contention that the second ruling denied him his constitutional rights is without merit. Michael testified at trial that his father warned his mother shortly before the shooting, "[T]his is your last chance, Give me Michael or I'll shoot." (Trial Transcript of April 23, 1975, pp. 120–21, 128) Before the grand jury, however, Michael did not testify that his father verbally threatened his mother at the time of the shoot-

ing. We agree with the Magistrate that there is no necessary inconsistency between Michael's silence before the grand jury and his testimony at trial, particularly in light of the fact that he was two years older at the time of trial and may have had a different view of the significance of the proceedings. Moreover, as the Magistrate points out, Michael was cross-examined extensively at trial concerning when he first told anyone about the threats, whether the relatives with whom he was living had influenced his testimony, and about his contacts with the authorities. Under these circumstances, if there was error, it did not arise to constitutional proportions. (See the excellent discussion of the Magistrate in her report, pp. 3–7)

8. 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

proceeding. Under these circumstances, we do not believe that the *Wainwright* rule is applicable.

## II.

In denying Ronson's motion to assert an insanity defense, the trial judge emphasized two factors: (1) defense counsel's failure to apply to the court for leave to serve and file notice of the defense as soon as Dr. Abrahamsen's report was received; and (2) the prejudice to the State of attempting to reconstruct, over two and a half years after the crime, Ronson's state of mind at the time of the shooting.

Ronson argues that the failure to seek leave to file formal notice is mitigated by the fact that the prosecution received actual notice of his intent to assert the defense both during the first trial and through Anolik's March 7th letter to the prosecution. However, we are satisfied by the testimony at the habeas hearing that, no matter how they were intended, the efforts of defense counsel were not sufficiently clear to put the prosecutor, who appears to have acted reasonably throughout the proceedings, on notice that the insanity defense would actually be asserted at the second trial.[9] Nevertheless, we disagree with the trial judge's conclusion that the prejudice to the State in this case of meeting an insanity defense justified absolute preclusion rather than a continuance.

The judge at the second trial noted that § 250.10 permits late filing by a defendant "to balance the scales of justice between the parties." (Opinion of Trial Judge, p. 2) However, in denying Ronson's application to assert an insanity defense, he focused on prejudice to the State. As he put it:

"It is also questionable that an examination at this time could evaluate the defendant's state of mind at the time of the occurrence of the crime. Accordingly, under all the facts and circumstances, this court finds that to impose so heavy a burden upon the prosecution at this time would be unfair and not in the interests of justice, and the defense sought to be interposed must be denied." (Opinion of Trial Judge of April 23, 1975, p. 4)

We do not agree that the prejudice to the State, as we perceive it to have been, was sufficient to outweigh Ronson's Sixth Amendment rights.

It is helpful to begin our discussion by noting the scope of the constitutional question before us. Ronson does not argue that the New York notice statute is unconstitutional on its face but only that its application to the facts of this case was unconstitutional. The State, on the other hand, argues that the trial judge's ruling involves only a question of state law and does not implicate constitutional issues. (Memorandum in Opposition of April 5, 1977, pp. 3–4) However, although a state is entitled to impose notice requirements to regularize its trial procedure, we cannot agree that the implementation of a statute which affects the right of a criminal defendant to introduce critical evidence at trial is immune from constitutional limitations. Indeed, without deciding the question, the Supreme Court stated in the context of a state notice of alibi statute that the extent to which a state may exclude relevant and probative evidence as a sanction for failure to comply with such a requirement does raise Sixth Amendment issues. *Williams v. Florida*, 399 U.S. 78, 83 n. 14, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). See also *Wardius v. Oregon*, 412 U.S. 470, 472 n. 4, 93 S.Ct. 2208,

---

9. Nathan Dembin, the Assistant District Attorney, testified at the hearing that after he received Anolik's letter of March 7th, he spoke with him to discuss its purpose. Anolik assured him, Dembin testified, that he would probably not represent Ronson at the next trial and that the letter was not intended as a formal notice that the insanity defense would be asserted but to preserve the option of asserting such a defense for his successor. Dembin also testified that, although Anolik did remain in the case, he never again mentioned the possibility of asserting the defense and, moreover, advised Dembin that his only witness at the second trial would be the defendant. We credit Dembin's testimony and, under these circumstances, do not believe that actual notice was given.

37 L.Ed.2d 82 (1972).[10] Accordingly, we must decide whether, under the circumstances of this case, preclusion can be reconciled with Ronson's constitutional rights.

Numerous Supreme Court decisions in recent years have recognized that "[F]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *Cool v. United States*, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972); *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). See Westen, *Compulsory Process II*, 74 Mich.L.Rev. 192 (1975). In this case, Ronson's interest in introducing evidence in support of an insanity defense was of the strongest degree. Not only was he charged with a capital offense but, since he admitted having shot his wife, testimony on the issue of insanity was crucial to his defense. See *Washington v. Texas, supra*, 388 U.S. 14, 16, 87 S.Ct. 1920, 18 L.Ed.2d 1019; *Singleton v. Lefkowitz*, 583 F.2d 618, 623 (2d Cir. 1978). Moreover, preclusion of testimony relating to an insanity defense was total: not only was Ronson denied permission to present Dr. Abrahamsen as his expert but even his own testimony supporting the insanity defense could not be considered since the trial judge refused to charge the jury on the defense.

■ Under these circumstances, Ronson's Sixth Amendment right could be outweighed only by severe prejudice to the State, which, in our view, the State bore the burden of demonstrating. The trial judge described the prejudice to the State of meeting a defense of insanity as that of securing evidence as to Ronson's state of mind at the time of the shooting more than two and a half years after the incident. However, this overstates the prejudice to the prosecution. While it is true that the State bears the responsibility of disproving a defense of insanity, the nature of this burden must be considered in light of the defendant's own evidence in support of the defense. Here, where the expert opinion which Ronson relied on was secured more than two years after the shooting, an added delay of six months would have had a slight, if not negligible, effect on the relative credibility of the prosecution's medical expert with regard to the insanity defense. In the absence of any evidence, such as, for example, an expert opinion, to support the State's contention that it would have been unduly prejudiced by the fact that its psychiatric witness would have examined the defendant two and a half years after the crime while the defendant's own psychiatric witness would have examined him only two years after the shooting, we believe that preclusion of the defense of insanity was unwarranted.

■ Our conclusion that a continuance rather than preclusion was the required result here is consistent with the purpose of § 250.10. The legislative history of the statute indicates that the sole purpose of the provision is to prevent disadvantage to the prosecution as a result of surprise:

"At present, there is no provision in the Code requiring notice that the defendant intends to present evidence of mental disease or defect. In fact, he may offer such evidence under a plea of not guilty without the specification of insanity and,

---

**10.** In *Williams v. Florida, supra*, 399 U.S. 78, 83 n. 14, 90 S.Ct. 1893, 1897, n. 14, 26 L.Ed.2d 446 the Court stated:

"We emphasize that this case does not involve the question of the validity of the threatened sanction, had petitioner chosen not to comply with the notice-of-alibi rule. Whether and to what extent a State can enforce discovery rules against a defendant who fails to comply, by excluding relevant, probative evidence is a question raising Sixth Amendment issues which we have no occasion to explore. *Cf. Brief for Amicus Curiae* 17–26. It is enough that no such penalty was exacted here."

The Magistrate has compiled an impressive list of state decisions which have rejected preclusion as a sanction for failure to comply with state notice rules. See Magistrate's Report, pp. 17–22. However, we decide only that on the facts of this case preclusion is not warranted.

if the defense is sustained, the jury may acquit. This, obviously, may place the People at an unfair disadvantage in that, surprised by the sudden interposition of this collateral defense, they may have insufficient opportunity to obtain the psychiatric and other evidence necessary to refute it and to establish, as they must, the defendant's sanity beyond a reasonable doubt. The bill would rectify this situation." [11]

Under the unusual circumstances of this case, in which both sides experienced substantial delay in securing evidence with regard to an insanity defense, a continuance would have provided the State with sufficient opportunity to obtain evidence to refute the defense.

Our ruling is not intended to bar preclusion as a sanction when failure to assert an insanity defense in a timely fashion results in demonstrable prejudice to the state, as, for example, when a defendant is examined by defense doctors shortly after committing a crime and by the state only at a much later date as a result of a failure by the defendant to file timely notice; or when delay results in the loss of evidence or witnesses necessary to the defense. Furthermore, it is appropriate to require a defendant who seeks to file notice of insanity after the statutory period has elapsed to make a showing that he possesses favorable evidence to support such a defense.[12] Here, however, where the defendant had received a report from a very experienced and highly regarded psychiatrist which *concluded* that he was temporarily insane at the time of the shooting, an extremely strong showing had been made. Finally, preclusion may be an appropriate sanction when a defendant has deliberately failed to file notice until after the statutory period has run. We do not find that Ronson deliberately refrained from filing notice. Moreover, even though the evidence falls short of establishing that the prosecution had actual notice, we credit defense counsel's statements at the habeas hearing that he believed that his efforts were sufficient to notify the Assistant District Attorney that the defense would be raised at the second trial.

For the reasons stated above, the writ of habeas corpus will be granted unless within ninety days Ronson is given a new trial consistent with the findings made in this decision.[13]

It is so ordered.

---

11. 1963 N.Y. Laws, p. 1986.

12. Indeed, such a showing is a prerequisite to establishing violation of the Sixth Amendment right to compulsory process: "The right [to compulsory process] is not without limitations. We have held that in the absence of some showing of what favorable evidence the witness would provide if compelled to testify, it is not improper to deny a continuance." *Singleton v. Lefkowitz, supra*, 583 F.2d 618, 623. See *United States v. Taylor,* 562 F.2d 1345, 1362 (2d Cir. 1977).

13. We recognize that the result of this decision is to heighten substantially the very problem which the State asserted it was confronted with at trial, namely being required to rely on a psychiatric examination of the defendant taken so long after the crime that it may no longer be credible, particularly in relation to the evidence available to the defense. However, no remedy short of a new trial is available here, and the prejudice to the State is no greater than that which results in many habeas cases when a new trial is required so long after the initial one that evidence necessary to secure a conviction may no longer be available.