William RONSON, Petitioner,

v.

**COMMISSIONER OF CORRECTION OF the STATE OF NEW YORK, Respondent.**

No. 82 Civ. 2955 (WCC).

United States District Court, S.D. New York.

Nov. 22, 1982.

William Ronson, petitioner, pro se.

Mario Merola, Dist. Atty., Bronx County, New York City, for respondent; David H. Fromm, Peter D. Coddington, Asst. Dist. Attys., New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

William Ronson ("Ronson") has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 30, 1980, following his conviction in New York Supreme Court, Bronx County, on a charge of manslaughter in the first degree, Ronson was sentenced to a term of seven to twenty-one years imprisonment. He alleges that his incarceration violates the United States Constitution and, therefore, seeks release from the State's custody. For the reasons stated below, Ronson's petition is denied.

*Background*

Before arriving in this Courthouse, Ronson endured a tumultuous odyssey commencing in 1972 and spanning both the federal and state judicial systems. On August 16, 1972, Ronson was indicted by a Bronx County Grand Jury on a charge that he had murdered his estranged wife. His first trial ended in a mistrial when the jury was unable to reach a unanimous verdict.

Petitioner was subsequently retried by the State, and on April 30, 1975 his second trial ended with the jury finding him guilty of manslaughter in the first degree. The presiding Justice Herbert Evans sentenced Ronson to a term of seven to twenty-one years imprisonment on that conviction. That judgment was affirmed by the Appellate Division, New York State Supreme Court, First Department, *People v. Ronson,* 54 A.D.2d 639, 387 N.Y.S.2d 619 (1st Dep't 1976), and on November 12, 1976 Ronson's application for leave to appeal to the New York Court of Appeals was denied, 40 N.Y.2d 925, 389 N.Y.S.2d 1038, 358 N.E.2d 270 (1976).

Petitioner thereafter attacked his conviction by filing an application for a writ of habeas corpus in this Court. On December 21, 1978, Judge Morris E. Lasker granted the writ, finding that Ronson's sixth amendment rights had been violated because he had not been given the opportunity to present an insanity defense at his second trial. See *Ronson v. Commissioner of Correction, State of New York,* 463 F.Supp. 97 (S.D.N.Y.1978). Judge Lasker's determination was subsequently affirmed by the Second Circuit. 604 F.2d 176 (2d Cir.1979).

On that mandate, the State brought Ronson to trial for a third time, commencing November 29, 1979. At this trial Petitioner was again found guilty of manslaughter in the first degree and was sentenced to the same seven to twenty-one year term of imprisonment. That judgment was affirmed without opinion by the Appellate Division, *People v. Ronson,* 86 A.D.2d 789, 449 N.Y.S.2d 372 (1st Dep't 1982), and Ronson was again denied leave to appeal to the New York Court of Appeals, *People v. Ronson,* 56 N.Y.2d 654, 450 N.Y.S.2d ——, 436 N.E.2d 205 (1982). Petitioner's post-judgment motion to vacate his conviction was also denied without leave to appeal to the Appellate Division.

In the instant petition, Ronson attacks his conviction at the third trial. Because all of Ronson's claims have been presented to the State courts and all avenues of appeal have

been exhausted, his petition is ripe for review by this Court. See *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

*Discussion*

Ronson's petition raises eight separate claims of constitutional violations arising from his third trial. Ronson alleges that:

(1) he was allowed to present only limited psychiatric testimony at trial, thus depriving him of his right to present an insanity defense as previously mandated by this Court and the Second Circuit under the sixth amendment to the Constitution;

(2) the trial court's charge and recharge to the jury on the question of insanity was improper and confusing, depriving him of a fair trial in violation of the fourteenth amendment;

(3) the presence of the prosecutor at a State-ordered psychiatric examination of petitioner in November 1979 violated his fifth amendment right against self-incrimination, made applicable to the states through the fourteenth amendment;

(4) because of the actions of his privately retained attorney, who was subsequently disbarred on another matter, petitioner was prevented from testifying before the Grand Jury that indicted him, thus depriving him of his sixth amendment right to effective assistance of counsel;

(5) there was no unanimous verdict of guilty at trial; rather, one juror was coerced by the trial court into voting for a guilty verdict in violation of petitioner's due process guarantee under the fourteenth amendment;

(6) the prosecutor possessed petitioner's dental college records without his permission and violated petitioner's fourteenth amendment guarantees when he showed them to the jury during trial;

(7) the destruction by the State prior to the third trial of the gun, bullets, and shell casings used in the killing of Ronson's wife deprived petitioner of the opportunity to present a full defense;

(8) each of petitioner's motions for a mistrial should have been granted and, when viewed as a whole, the individual errors claimed therein deprived petitioner of his right to a fair trial in violation of the fourteenth amendment.

I will discuss each of these alleged constitutional violations separately.

1. Limited Psychiatric Testimony

Ronson alleges in Paragraph Two of his petition that he was denied his opportunity to present a defense of temporary insanity. In a prior habeas proceeding, this Court granted Ronson's petition on the ground that he had been denied this opportunity at his second trial. See *Ronson, supra*, 463 F.Supp. 97. But the transcript of petitioner's third trial belies any assertion that he was not given the broadest opportunity to present an insanity defense in accordance with his constitutional guarantees and the mandates of both this Court and the Second Circuit.

During the course of the trial, two psychiatrists, Dr. Abrahamsen and Dr. Schwartz, testified as experts concerning Ronson's mental condition. There was no attempt by petitioner to introduce any further medical testimony. Dr. Abrahamsen, the defense's psychiatrist, testified at great length and was given broad latitude by the trial judge concerning the scope of that testimony. The court repeatedly overruled the prosecutor's objections designed to restrict the range of Dr. Abrahamsen's comments. Dr. Abrahamsen was allowed to testify out of order to accommodate petitioner; he was allowed to testify based on observations occurring after 1974, even though petitioner's counsel failed to give the prosecution a copy of Dr. Abrahamsen's updated report until less than one hour before the doctor began testifying; he was allowed to profess his views concerning the credibility of the eyewitness testimony of petitioner's son Michael and finally, but most importantly, he was allowed to state clearly for the jury his expert opinion that petitioner was not responsible for his act because of his mental state at the time of the shooting.

Further, petitioner's counsel was given a liberal hand in his cross-examination of Dr. Schwartz, the prosecution's expert. Together, the testimony of these two doctors comprises approximately twenty percent of the total record. Moreover, Ronson himself was allowed to testify concerning certain incidents that he had experienced as a member of the military which may have affected his ability knowingly to shoot his wife. In light of this extensive testimony, it can hardly be said that Ronson was denied his right to present an insanity defense.

### 2. The Jury Charge

In his petition, Ronson presses the same objections to the trial court's charge to the jury that he raised initially at trial and later on appeal to the Appellate Division. Ronson's first objection goes to the court's charge on the effect of "extreme emotional disturbance." After quoting and explaining the elements of the insanity defense[1] as set forth in the New York statutes, N.Y. Penal Law § 30.05 (McKinney 1975), the court charged the jury:

> You should know at this point that an extreme emotional disturbance is not a defense to a charge of manslaughter in the first degree. It is a defense to murder, which is not the subject of this trial. (Tr. 1513).

Although it is clear that there are other defenses which would also not apply to the crime of manslaughter, the court intentionally chose to charge the jury on this mental state because it was discussed at trial by the two psychiatrists.

> In view of the tenor of the expert testimony, the allusion to the "emotional disturbance of the defendant" at the time or times approximate to the crime, the Court will incorporate the suggested statement, even although [sic] it does not apply to, as a defense, in this case. And even although [sic] its application is limited to a murder case charge. (Tr. 1345).

Thus, this charge was given to prevent the jury from confusing the "emotional disturbance" referred to during the trial testimony with the requirements for insanity set forth in the New York statute.

Ronson in his petition alleges as he did in his state appeal that another type of confusion resulted; that because of the instruction the jury might have believed they could not consider Ronson's "mental disturbance" in determining whether he had the requisite intent to "cause serious physical injury to another person," an essential element of the crime of manslaughter in the first degree. N.Y. Penal Law § 125.20(1) (McKinney 1975). There is no claim that this charge embodies an incorrect statement of the law.

 In determining whether an instruction to a jury gives rise to a constitutional violation, this Court does not view the single instruction in isolation but rather in the context of the overall charge. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). The analysis is not whether the trial court failed to isolate and correct a particular, improper instruction, but whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* This burden on a habeas petitioner to demonstrate that the improper instruction was so prejudicial that it supports a collateral attack on the constitutionality of his conviction is far greater than what is required to show plain error on direct appeal. *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977); see *Callahan v. LeFevre*, 605 F.2d 70, 73 (2d Cir.1979).

 When read in its proper context as part of the full jury charge, it is clear that the instruction on emotional disturbance did not deprive petitioner of his right to a fair trial. After the jurors began deliberating, they requested a recharge on the issue of insanity. During this supplemental charge, the court stated, with respect to "emotional disturbance," that:

---

1. Although this defense is more properly called that of mental disease or defect, it is commonly referred to as insanity and will be so described here.

In other words, a defendant's mental disease or defect must be the cause of his lack of substantial capacity to know or appreciate. You should know at this point that an extreme emotional disturbance is not a defense to a charge of manslaughter, although it may be interposed in a charge of murder. When I say manslaughter, I mean manslaughter as alleged in this case, manslaughter in the first degree. You should know also that extreme emotional disturbance is the emotional state of an individual who:

(a) has no mental disease or defect that arises to the level established by Section 30.05 of the Penal Law;

(b) is exposed to an extremely unusual and overwhelming stress;

(c) has an extreme emotional reaction to it, as a result of which there is a loss of self-control and reason, is overborne by intense feelings such as passion, anger, distress, grievance, excessive agitation, and other similar emotions.

You may consider Dr. Abrahamsen's testimony in a medical sense, not in a legal sense . . . .

(Tr. 1537–38).

Moreover, in the main charge the court gave the jury clear instructions on how to evaluate the element of intent that the State was required to prove before Ronson could be found guilty.

When you are determining another person's intent you are actually probing that person's mind to determine just what he had in mind at the time he is alleged to have committed some particular act. It is not possible to look into another person's mind to determine what thoughts are or were there. So, the intent mentioned in the law is determined from the facts and all of the surrounding circumstances, by what the person said, by what the person did, or by a combination of both. . . . A person acts intentionally with respect to a result when his conscious objective is to cause such result, or engage in such conduct. . . . Motive is not an essential element of the crime

charged in the present indictment. Intent, however, is.

. . . . .

In order for you to find the defendant guilty of this crime, the People are required to prove from all of the evidence in the case beyond a reasonable doubt, each of the following three elements . . . that the defendant shot June Ronson with a loaded pistol with the intent to cause serious physical injury to the said June Ronson. . . . [A] person acts with intent to cause serious physical injury when his conscious aim or objective is to cause serious physical injury.

(Tr. 1502–03, 1508–09).

On this record I must agree with the State that while the jury was correctly told that the defense of extreme emotional disturbance is not a technical legal defense to a charge of manslaughter in the first degree, they were allowed to consider it as medical evidence of Ronson's mental state when they determined whether he had the requisite intent to commit the crime. In all situations such as the instant one, where intent is an element of the crime and a mental capacity defense is being asserted, there always exists the potential for jury confusion. This potential arises from the reality that each juror's analytical facilities are being strained when he is asked after sitting through a lengthy trial to assess on the basis of technical, oral instructions many separate, but often overlapping, elements of a crime and it exists even where the trial judge's instructions are perfect. However, it would be a rare case in which a lawyer could not point to a specific instruction in a charge as lengthy as the one required here and argue that it did not provide the jury with ideal guidance. But that does not necessarily amount to a constitutional violation.

In the instant case, if the court had not given the limiting instruction on extreme emotional disturbance, it risked the possibility that the jury would have erroneously interpreted the testimony on that subject as establishing the elements of an insanity defense, when under New York law it does

not. Although the court's charge on this issue was not perfect, I conclude that it was not constitutionally defective.

 Petitioner also objects to the court's charge on the "presumption" of sanity, asserting that it improperly shifted the burden of proving insanity to him, when in fact the State was required to prove beyond a reasonable doubt that petitioner was sane at the time he shot his wife.[2] The court charged the jury that:

> The law provides that when the defense of legal insanity is raised by a defendant in a criminal trial, the People have the burden of overcoming such a defense by proof beyond a reasonable doubt before such defendant may be convicted of the crime. Applying that legal principle to this case, in that the defendant has raised this defense, before the defendant may be convicted of the crime charged, the People must have established to your satisfaction from all the evidence in the case beyond a reasonable doubt that the defendant, when he shot and killed June Ronson, was not legally insane within the meaning of the law. In other words, the law does not require the defendant to prove that he was legally insane. The law does require the People to prove that the defendant was not legally insane .... The criminal law of this State basically contains the presumption that every person is presumed to be sane. That is that sanity is the usual state of mind of a person. An accused is presumed to possess a sufficient degree of mental capacity to be held responsible for his criminal acts unless and until the contrary is shown. And in this case, the People, the prosecution has relied upon this presumption. In New York state, the legal test for lack of criminal responsibility by reason of legal insanity is specifically defined and set forth in the statute just read to you, and this is the test that you must apply to the evidence in this case for here, the defense has met the presumption by offering proof of insanity at the time of the commission of the crime. (Tr. 1510–12).

Ronson is indeed correct that the State was required to prove that he was sane at the time he committed the shooting. The presumption of sanity referred to in the charge merely imposed a burden on the petitioner to introduce some evidence of his lack of sanity; once any such evidence was produced, the presumption disappeared and the State was required to establish beyond a reasonable doubt that Ronson was sane. See Edward Cleary, McCormick's Handbook on the Law of Evidence § 345 at 821 (2d ed. 1972). Although I agree with petitioner that the court should not have made reference to the presumption, and that the charge would have been better had that

---

**2.** Although the State argues that Ronson has waived this objection because he failed to take exception to this element of the charge at trial, I find that this claim is properly preserved for habeas review. The Second Circuit recently noted, relying on § 470.05(2) of the New York Criminal Procedure Law, that the Appellate Division has the power to consider errors that were not objected to at trial, where such errors deprived defendant of a fair trial. *Callahan, supra,* 605 F.2d at 73 n. 6. Although petitioner's counsel failed to object to this instruction at trial, he did properly present it to the Appellate Division for review. The fact that the Appellate Division affirmed petitioner's conviction without opinion does not alter the situation. As this Court recently stated under analogous circumstances:

> Respondent nonetheless contends that when, as here, no objection is made at trial and the conviction is affirmed by the Appellate Division without opinion, the petitioner has the burden of demonstrating that the Appellate Division exercised its discretion to consider petitioner's constitutional claims rather than affirming the conviction on state procedural grounds. The Second Circuit, however, has indicated that an issue is sufficiently preserved for the purposes of federal habeas corpus review when it is properly raised in the Appellate Division on appeal from the conviction. Thus, if the Appellate Division has been afforded a "fair opportunity" to consider the same constitutional claims as those advanced in the habeas proceeding, the petitioner will be deemed to have preserved the issues for habeas review and fulfilled his concomitant obligation to exhaust state remedies.

*Washington v. Harris,* 502 F.Supp. 1267, 1270 (S.D.N.Y.1980) (citation omitted), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982).

reference simply been omitted, the standard of review of a habeas petition is not to locate plain error at trial; the petitioner must meet the heavier burden of demonstrating that the alleged error amounts to a constitutional violation. See *Henderson, supra,* 431 U.S. at 155, 97 S.Ct. at 1737.

Ronson's argument that the charge operated to deny him due process of law in violation of the fourteenth amendment is dependent upon reading the court's reference to the presumption in isolation. But when the charge is properly read in context, it is clear that the court informed the jury that the State had the burden of proving beyond a reasonable doubt that Ronson was sane. Moreover, even after mentioning the presumption, the court stated that Ronson had met it. Thus, when the charge is viewed as a whole, this defect cannot be said to rise to the level of a constitutional violation; the jury charge did not serve to deny petitioner due process of law; therefore his claim that his conviction should be set aside on this account must fail.

### 3. The Psychiatric Examination

When petitioner was examined by Dr. Schwartz, the prosecution's psychiatrist, both the prosecutor and petitioner's attorney were present. Ronson claims that his fifth amendment rights were violated "when the prosecution was present at the State-ordered psychiatric examination ... taking voluminous notes used by the prosecution at trial over objection ...." The Supreme Court has defined the scope of the fifth amendment privilege against self-incrimination, made applicable to the states by the fourteenth amendment, as follows:

> The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory ... it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used.
>
> *In re Gault,* 387 U.S. 1, 47–48, 87 S.Ct. 1428, 1454–1455, 18 L.Ed.2d 527 (1967), quoting *Murphy v. Waterfront Comm.,*

378 U.S. 52, 94, 84 S.Ct. 1594, 1611, 12 L.Ed.2d 678 (1964) (White, J. concurring). But the privilege only protects a person from giving "testimony" that incriminates him. See *Fisher v. United States,* 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976); *Hollis v. Smith,* 571 F.2d 685, 690 (2d Cir.1978). Most circuits, including the Second Circuit, have held that requiring a defendant who has raised an insanity defense to undergo a government-sponsored psychiatric examination involves no compelled testimonial self-incrimination. See, *e.g., Hollis, supra,* 571 F.2d at 691; *United States v. Cohen,* 530 F.2d 43, 47 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *United States v. Baird,* 414 F.2d 700, 709 (2d Cir.1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970); *Pope v. United States,* 372 F.2d 710, 717–21 (8th Cir.1967), *cert. denied,* 401 U.S. 949, 91 S.Ct. 953, 28 L.Ed.2d 232 (1971). But see *United States v. Alvarez,* 519 F.2d 1036, 1042 (3d Cir.1975). The Second Circuit's rationale for this rule derives in part from the notion of waiver by a defendant who has put his sanity in issue, and in part from an understanding that the examination is designed only to determine whether the defendant possesses the requisite mental state to be guilty of the crime charged. See *Hollis, supra,* 571 F.2d at 691. *Contra Alvarez, supra,* 519 F.2d at 1042 (holding that statements can be compelled testimonial self-incrimination since sanity goes to guilt or innocence of the accused). In general, this Circuit analogizes the compelled psychiatric examination to other forms of nontestimonial cooperation with the prosecution, such as giving blood samples, providing handwriting or voice exemplars, or appearing in a line-up. See *Hollis, supra,* 571 F.2d at 681.

The facts of the instant psychiatric examination differ from all of the previously reported examples in that the prosecutor observed and took notes while the doctor conducted his examination. I am not required to decide whether this distinction is significant, however, because the record does not indicate that petitioner made any

incriminating, substantive comments that were later used against him by the State.[3] As noted above, the fifth amendment only protects a person from giving *incriminating* testimony. Since the element of incrimination is not present here, petitioner cannot now claim that his fifth amendment rights have been violated as a basis for overturning his conviction.

### 4. Effective Assistance of Counsel

█ Ronson asserts that he would never have been indicted if he had been permitted to appear before the grand jury and present exculpatory evidence. Although Ronson's petition is not entirely clear on this issue, it appears that he is making two arguments. First, he is claiming that he had a right to appear before the grand jury. It is clear, however, that one does not have any constitutional right to appear before a grand jury. See *United States ex rel. McCann v. Thompson,* 144 F.2d 604, 605 (2d Cir.), *cert. denied,* 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944).

█ Second, petitioner alleges that he was prevented from appearing before the grand jury solely because of the actions of his retained counsel; this, together with certain other, unspecified acts by counsel, is alleged to constitute ineffective assistance of counsel in violation of the sixth amendment, made applicable to the states through the fourteenth amendment.[4] Ronson cannot possibly succeed on this count of his petition. Whatever petitioner's displeasure with his attorney may have been, I cannot conclude that the attorney's performance

fell outside the range of competence demanded of attorneys in criminal cases or made the proceedings a farce and mockery of justice, see *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1973); *United States ex rel. Marcelin v. Mancusi,* 462 F.2d 36, 45 (2d Cir.1972), simply because he advised his client not to testify before a grand jury.

### 5. Guilty Verdict

Ronson's fifth claim is that there was never a unanimous verdict of guilty at trial as required by New York law. That failure, he asserts, amounts to a denial of due process guaranteed by the fourteenth amendment. Although the announcement of the verdict at Ronson's trial did not proceed without incident, I cannot agree with petitioner's contention that a unanimous verdict was not properly reached and recorded.

After the foreman of the jury announced the verdict of guilty, the jury was polled. As the transcript discloses, juror number two, Franka Gertel, had some difficulty announcing her agreement with the rest of the panel:

THE COURT: Poll the jury.

. . . . .

Lorenzo Durio, is that your verdict?
MR. DURIO: Yes.
COURT CLERK MOYNA: Franka Gertel, is that your verdict?
MISS GERTEL: (No response.) (Miss Gertel is crying.)
COURT CLERK MOYNA: Franka Gertel, is that your verdict?

---

**3.** The presence of the prosecutor at the examination could possibly serve to create a coercive setting, rendering any statements made by the accused involuntary and governed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See *United States v. Jones,* 640 F.2d 284, 288 (10th Cir.1981). In this case, of course, petitioner's lawyer was also present at the examination. Moreover, even if the accused were to make an incriminating statement about the offense itself during such an examination, the particular statement could be suppressed.

**4.** Although the State argues that State action is not present in this situation since petitioner

was represented by retained counsel, I note that courts have been inclined to find state action where the quality of the representation has been below the level of a minimally competent attorney. Thus, state action can be established by showing that the trial process itself was so fundamentally unfair as to deprive the defendant of due process or, even if that showing is not made, by demonstrating significant involvement by the state through the knowledge or awareness on the part of the trial judge, the prosecutor, or other state judicial employees of the defendant's level of representation. See, *e.g., Alvarez v. Wainwright,* 522 F.2d 100, 104–05 (5th Cir.1975).

MISS DIETZ: Not really.

COURT CLERK MOYNA: Madam—

THE COURT: Mrs. Dietz, let her answer herself.

COURT CLERK MOYNA: Your Honor, shall I proceed to the other jurors?

THE COURT: Yes. Go to the other jurors.... (At this time some water was handed to Juror Number Two.)

COURT CLERK MOYNA: Shall I proceed, your Honor, or give her a moment?

Franka Gertel, as has been stated by your foreman and by the other eleven members of the jury, that you have found the defendant William Ronson guilty of the crime of Manslaughter in the First Degree.

Franka Gertel, is that your verdict? (At this time Juror Number Two, Miss Gertel, is crying. Following this, Juror Number Two and Juror Number Three confer.)

THE COURT: Miss Dietz, the verdict must be her verdict.

COURT CLERK MOYNA: Franka Gertel, I will have to put the question to you again.

Franka Gertel, as stated by your foreman and by the other eleven members of the jury, they have stated that they find the defendant William Ronson guilty of the crime of Manslaughter in the First Degree.

Franka Gertel, is that your verdict?

MISS GERTEL: I suppose it is.

COURT CLERK MOYNA: The answer was "I suppose it is," your Honor.

MR. ANOLIK: Your Honor, at this time—

THE COURT: The jury will retire to the juryroom, please. The whole jury, please retire to the jury room.

After a ten-minute delay, during which time the jury was instructed not to discuss the case, the court called the jury back in and the following discourse occurred:

COURT CLERK MOYNA: Shall I put the question, your Honor?

THE COURT: Yes.

COURT CLERK MOYNA: Franka Gertel, it has been stated by the foreman and by the other eleven members of the jury, that they have found the defendant William Ronson guilty of the crime of Manslaughter in the First Degree. Franka Gertel, is that your verdict?

MRS. GERTEL: We voted that he was sane while he was doing it.

COURT CLERK MOYNA: Your Honor, did your Honor hear the answer?

THE COURT: Yes. "We voted that he was sane while he was doing it."

The question, Mrs. Gertel is, do you join with the other eleven in voting guilty?

MRS. GERTEL: I can't hear. I'm sorry.

THE COURT: Do you join with the other eleven jurors in voting guilty?

COURT CLERK MOYNA: Of Manslaughter in the First Degree?

MRS. GERTEL: Your Honor, we had only to decide—

THE COURT: I don't hear you.

MRS. GERTEL: Your Honor, we were only to decide whether he was sane or not insane while he committed the crime. And we all agreed that he was sane while he was doing it.

THE COURT: And then, from that position, you then go to the position of whether or not you find him guilty. And so the question is now put to you, do you vote guilty, or do you vote not guilty?

MRS. GERTEL: If he was sane, he was guilty.

THE COURT: Thank you very much. You may announce the verdict.

In support of his contention that juror Gertel's verdict was conditional and coerced, petitioner relies upon *United States v. Sexton,* 456 F.2d 961 (5th Cir. 1972), and *United States v. Edwards,* 469 F.2d 1362 (5th Cir.1972). The holding of *Sexton,* followed in *Edwards,* is "that where a poll indicates a lack of unanimity the trial court must refrain from attempting to extract unanimity by questioning from the bench and must either order the jury to retire for further deliberations or dismiss them." *Edwards, supra,* 469 F.2d at 1367 (footnote omitted). In both of those cases, however, the questioned juror expressly

stated that her verdict was uncertain prior to being interrogated by the judge. In *Sexton,* the following commentary occurred:

[JUROR STACKHOUSE]: It is conditional.

COURT: You have to answer either guilty or not guilty.

STACKHOUSE: Guilty.

*Sexton, supra,* 456 F.2d at 963.

In *Edwards,* after the questioned juror stated "it's my verdict but I'm still in doubt," the court said "all right, it's your verdict" and proceeded with the poll. *Edwards, supra,* 469 F.2d at 1366.

 In the instant case, although Juror Gertel was emotionally distraught at the thought of finding a man guilty of manslaughter and had a hard time composing herself when asked to report her verdict, the record demonstrates that she truly believed Ronson guilty under the applicable legal standards. In such a situation, it is proper for the court to examine the juror in open court to clear up all doubts concerning her inability to articulate her verdict clearly. See *United States v. Lawrence,* 618 F.2d 986, 988 (2d Cir.1980). This does not constitute coercion, contrary to petitioner's contention. Moreover, in such a situation, there is nothing to be gained by sending the jury back for immediate, further deliberations, as Ronson claims should have been ordered. See *id.* Thus, I find that a verdict of guilty was unanimously rendered at petitioner's trial, consequently that Ronson's due process guarantee was not infringed on this account.

### 6. Dental Records

 Petitioner next claims that the State's possession and use of his dental college records was in violation of the law and amounted to a deprivation of his fourteenth amendment rights, requiring reversal of his conviction. This contention is entirely frivolous. If I assume that the State's possession of the records was a violation of some

statute,[5] it is still hard to believe that this illegal possession amounts to a constitutional violation. But even if I assume that petitioner has proved a constitutional violation occurred, it is clear that it would be a harmless error. In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court stated that before a constitutional error can be held harmless, the court must determine that it was harmless beyond a reasonable doubt. 386 U.S. at 24, 87 S.Ct. at 828. I have no trouble making such a finding in this case. Petitioner's dental college records could not possibly have had any bearing on the jury's ultimate determination of his guilt or innocence. His dental record claim is, therefore, denied.

### 7. Destruction of the Gun

After petitioner's second trial, but before his third, the State destroyed, in the normal course of police business, the gun and bullets with which Ronson shot his wife. Petitioner claims that the State's failure to produce the gun and bullets amounted to a denial of due process guaranteed by the fourteenth amendment.

 The Constitution does not obligate the State in every criminal trial to produce the weapon with which the victim was killed. Rather, the due process guaranteed by the fourteenth amendment protects an accused from being convicted unless the state has produced "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560 (1979). Therefore, if the State has introduced evidence sufficient to convince a jury beyond a reasonable doubt that the accused has committed the physical act of shooting the victim, the Constitution does not require them to also supply the weapon; the accused has been given all the due process which he is guaranteed.

---

**5.** In his petition, Ronson makes reference to a nonexistent statute. The State believes he intended to cite the "Family Educational Rights and Privacy Act of 1974," 20 U.S.C. § 1232g.

■ Ronson's contention seems wholly frivolous given the actual issues at his trial. There was never any dispute that he had committed the physical act of shooting his wife. The only real issue was whether he was insane at the time he shot her. The testimony at trial was that Ronson had given a gun to the police. Petitioner's attorney stipulated, for the purpose of saving time, that the serial number of the gun Ronson had turned in was the same as that of the gun the police ballistics expert had tested. (Tr. 348–49). The police expert testified that this was the gun that had killed Mrs. Ronson. (Tr. 349–61). That evidence is obviously enough, by itself, to establish beyond a reasonable doubt that Ronson had committed the violent act. When viewed along with the eyewitness testimony, it is overwhelming.

On his side, petitioner does not clearly explain how the existence of the weapon could have aided his defense. Although he argues that it might have cleared up the question whether five or six shots were fired from the gun, that question was not germane to his guilt or innocence, or, more specifically, to whether he shot his wife or whether he was sane when he did so. Since introduction of the gun could not have had any conceivable influence on the jury's determination of the issues, petitioner's claim is denied.

8. Summary

Petitioner's final claim is that each of his approximately twenty-two motions for a mistrial should have been granted and, when viewed as a whole, these errors combined to deprive him of a fair trial in violation of the due process guarantee of the fourteenth amendment. It would be useless at this juncture to discuss individually each error complained of. After examining the entire record, however, I am convinced that petitioner's trial, although not error-free, was a fair one. This is all that the fourteenth amendment requires.

The petition for a writ of habeas corpus is denied.

SO ORDERED.